**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DAWN MARVIN,

                                        Plaintiff,

        v.                                                              No. 3:15-CV-74
                                                                        (GLS/CFH)

CAROLYN W. COLVIN, Commissioner
of Social Security Administration,

                                        Defendant.

_____

**APPEARANCES:**                               **OF COUNSEL:**

Lachman, Gorton Law Firm                       PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for Plaintiff

Social Security Administration                 SANDRA M. GROSSFELD, ESQ.
Office of Regional General Counsel,
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

        Plaintiff Dawn M. Marvin ("plaintiff") brings this action pursuant to 42 U.S.C. §

405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner" or "defendant") denying her applications for supplemental security

income benefits ("SSI") and Disability Insurance Benefits ("DIB").  Plaintiff moves for a

finding of disability, and the Commissioner cross moves for a judgment on the

pleadings.  Dkt. Nos. 13, 20.  For the following reasons, it is recommended that the matter be remanded to the Commissioner for further proceedings consistent with this Report-Recommendation and Order.

## I.  **Background**

Plaintiff, born on May 15, 1978, applied for SSI and SSDI benefits on August 20, 2008, alleging a disability onset date of January 1, 2006.  Dkt. No. 10-5 at 2-11. Plaintiff's applications were denied on December 5, 2008.  Dkt. No. 10-4 at 2-7. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on January 22, 2009, and plaintiff appeared for a hearing on February 22, 2010.  Dkt. No. 10-2 at 73-96.  ALJ John P. Ramos issued an unfavorable decision on May 3, 2010. Dkt. No. 10-3 at 4-25.  Plaintiff timely filed a request for review by the Appeals Council. Dkt. No. 10-2 at 7.  The Appeals Council vacated the decision, and remanded the case to the ALJ for further proceedings.  Dkt. No. 10-3 at 23-25.  A second hearing was held on October 12, 2011 before ALJ Ramos.  Dkt. No. 10-2 at 31-72. The ALJ issued an unfavorable decision dated November 4, 2011.  Id. at 11-29.  The Appeals Council denied plaintiff's timely request for review.  Id. at 2-6; Dkt. No. 10-9 at 25-27.  Plaintiff thereafter commenced an action before this Court.  See Marvin v. Colvin, 3:12-CV-1779 (GLS), Dkt. No. 1; 2014 WL 1293509 (N.D.N.Y. Mar. 31, 2014).

In a Memorandum Decision and Order dated March 31, 2014, then Chief District Judge Sharpe reversed the Commissioner's decision and remanded for further proceedings consistent with his Decision and Order.  See 2014 WL 1293509, at *11.

2

The Appeals Council vacated the November 4, 2011 determination, "remand[ed] this case to an Administrative Law Judge for further proceedings consistent with the order of the court," and directed that the case be assigned to a new ALJ "[a]s this case was previously remanded to the same Administrative Law Judge." Dkt. No. 10-9 at 66-69. The Appeals Council noted that the ALJ "will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." Id. at 68.

ALJ Elizabeth W. Koennecke afforded plaintiff an opportunity for a supplemental hearing and to submit any additional evidence. Dkt. No. 10-12 at 3. Plaintiff requested a hearing and submitted additional evidence in the form of: records from Lourdes Primary Care Associates- Endicott from December 19, 2012 through April 8, 2014; records from Lourdes Hospital dated December 2, 2012 through June 24, 2014; an "addendum to questionnaire 07/01/14; "underlying records 03/15/12 through 7/01/14, from treating physician Sumanlal Kaneria, MD"; records from Dr. Kaneria, M.D. from July 9, 2013 through September 23, 2014; records from New Horizons from January 20, 2013 through May 30, 2014; and a statement from Barbara A. Smith, plaintiff's mother-in-law, dated October 23, 2014. Dkt. No. 10-12 at 5-13. On September 22, 2014, plaintiff appeared before the ALJ via videoconference. Dkt. No. 10-8 at 42-55. On November 7, 2014, ALJ Koennecke issued an unfavorable determination. Dkt. No. 10-8 at 5-55.[1] This decision became final on January 7, 2015. Dkt. No. 1 ("Compl") at 1.

---

[1] It does not appear that plaintiff requested review of the November 2014 ALJ determination by the Appeals Council.

This action followed.  See generally Compl.

A.  **Facts**

For a detailed review of the facts, reference is made to the parties' briefs, which this Court adopts insofar as the facts set forth therein are undisputed.  Dkt. Nos. 13, 22. For a more detailed review of the November 2011 ALJ determination and Decision of this Court remanding the matter to the Commissioner, reference is made to Judge Sharpe's Memorandum-Decision and Order dated March 31, 2014.  Marvin, 2014 WL 1293509.  Any facts that may have developed since that Decision will be explicitly noted within this Report-Recommendation and Order.

II.  **Discussion**

A.  **Standard of Review**

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987);  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31

(2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).   If supported by substantial evidence, the Commissioner's finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).   However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g), as amended; Halloran, 362 F.3d at 31.

## B.  **Determination of Disability**[2]

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1) (2004).  Disability is defined as the "inability to

---

[2]  Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably."  Donato v. Sec'y of Health and Human Services, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work

experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan,134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

## C. **ALJ Determinations**

### 1. **Earlier ALJ Determination - November 4, 2011**

For a greater understanding of the procedural posture of the case, the undersigned finds it helpful to include a very brief review of the ALJ determination upon which this Court remanded in its March 31, 2014 Memorandum-Decision and Order. At step one, ALJ Ramos concluded that plaintiff met the insured status requirements of the SSA through December 31, 2006. Dkt. No. 10-2 at 14. He next concluded that she had not engaged in substantial gainful activity since that date. Id. The ALJ determined that plaintiff had the following severe impairments: heroin addition controlled by

methadone, cocaine and cannabis use in remission, hepatitis C, panic disorder, post-traumatic stress disorder, and impulse control disorder.  Id.  The ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled  one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 16.  Determining plaintiff's residual functional capacity ("RFC"), the ALJ determined that plaintiff could perform light work, insofar as she could lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours in an eight hour work day; sit for about six hours in an eight hour work day; push and pull consistent with light work; occasionally climb, balance, kneel, crouch, crawl, and stoop; could understand, carry out, and remember simple instructions; use appropriate judgment to make simple work-related decisions, respond appropriately to supervision, coworkers, and usual work situations; deal with changes in a routine work setting; and have no more than occasional interaction with coworkers, supervisors, and the general public in an occupation with little change in job duties or routine on a daily basis.  Id. at 18.  The ALJ determined that plaintiff had no past relevant work and no transferability of job skills.  Id. at 21-22.  Finally, after consulting a vocational expert, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff could perform.  Id. at 22.  The ALJ referenced the vocational expert's testimony that the hypothetical claimant could perform representative occupations such as small product assembler, housekeeper-cleaner, and preparer.  Id. at 22-23.  Thus, the ALJ concluded that plaintiff was not disabled, as defined by the SSA.  Id. at 24.

## 2. **Current ALJ Determination - November 7, 2014**

Using the five-step disability sequential evaluation, the ALJ found that plaintiff had not engaged in any substantial gainful activity since January 1, 2006, the alleged onset date. Dkt. No. 10-8 at 9. At step two, the ALJ concluded that plaintiff had the following severe impairments: "a mental impairment (variously characterized) (20 CFR 404.1520(c) and 416.920(c))." Id. at 9. At step three, the ALJ concluded that plaintiff did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404p, Appx. 1. Id. at 14. Before reaching step four, the ALJ concluded that plaintiff has the residual functional capacity ("RFC")

> to perform the physical demands of work at all exertional levels, but has nonexertional limitations. Specifically, the claimant retains the ability to understand, remember, and carry out simple instructions; can use appropriate judgment to make simple work-related decisions; can respond appropriately to supervision, co-workers, and usual work situations; and can deal with changes in a routine work setting. However, the claimant should have no more than occasional interaction with co-workers, supervisors, and the general public in an occupation with little change in job duties or routine on a daily basis.

Dkt. No. 10-8 at 17. At step four, the ALJ noted that, pursuant to 20 C.F.R. §§ 404.1565 and 416.965, plaintiff is unable to perform her past relevant work as a sandwich maker. Id. at 27-28. She noted that "[t]ransferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." Id. at 28. Next, the ALJ determined that, given plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that the claimant can perform." Id. In making this determination, the ALJ referenced oral testimony from Vocational Expert Vause, who testified that an individual with an "ability to perform work at all exertional levels" who has "been compromised by nonexertional limitations" could perform the roles of counter-supply worker, cleaner, and bartender helper. Id. at 29. Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from January 1, 2006, through the date of this decision (20 CFR 404.1520(g)) and 416.920(g))."

D. **Analysis**

Plaintiff's brief provides that the "sole issues presented . . . are whether the ALJ complied with the Court's Order of remand and whether the Defendant has sustained her Step 5 burden." Dkt. No. 13 at 4. Specifically, plaintiff asserts that this Court's March 31, 2014 Memorandum Decision and Order "limited the remand to one very discrete issue, and that the ALJ's "entirely new disability determination . . . . was not authorized by the remand." Id. at 5-6. Although plaintiff "do[es] not focus on the medical records at issue," beyond her general argument that the mental RFC is unsupported by substantial evidence, plaintiff "continues to maintain that Plaintiff has a long history of serious mental and physical impairments that, in combination, preclude her from working." Id. at 4.[3] For the reasons below, the court need only address the

---

[3] Plaintiff provides, in a footnote, that she "continue[s] to maintain that all prior determinations improperly assess Plaintiff's mental RFC, but understand[s] that the issue has been decided against Plaintiff by this Court in the prior decision. In the event that this Court does not find that its prior determination in this regard constitutes collateral estoppel, then we would request that this matter be remanded so that Plaintiff may address that issue because she did not understand that the prior remand would entail determination of a new RFC." Id. at 13 n.1. The undersigned is not entirely sure the relief

first issue – whether the Appeals Council and ALJ properly complied with this Court's remand order.

As this District has set forth,

> 'The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or present manifest injustice.'

Gladle v. Astrue, 12-CV-284, 2013 WL 4543147, at *3 (N.D.N.Y. Aug. 27, 2013)

(quoting Ali v. Mukasey, 529 F.3d 478, 490 (2d Cir. 2008)).  The Supreme Court of the United States recognized,

> [w]here a court finds that the Secretary has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed . . . . Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.

Sullivan v. Hudson, 490 U.S. 877, 885-86 (1989) (internal citations omitted).  Although not explicitly decided by the Second Circuit, district courts within the Circuit have concluded that the law of the case doctrine applies to Social Security appeals.

---

plaintiff is requesting when she asks the court to "remand so that Plaintiff may address that issue[.]" Id.  To the extent this request can be interpreted as asking the undersigned for an opportunity to provide supplemental briefing addressing the November 2014 ALJ determination, such request is denied, as plaintiff had such opportunity to address all issues in her brief pursuant to General Order 18.  Further, the undersigned does not find that such additional briefing is needed, given the recommendation set forth in this case.

Calderon v. Astrue, 683 F. Supp. 2d 273, 276 (E.D.N.Y. 2010)[4]; Gladle, 2013 WL 4543147, at *3 ("Further, 'ALJs have acknowledged throughout the years that the remand instructions they receive from the federal district court are the law of the case . . . .' 'Similarly, the Commissioner is implicitly limited by any findings of the district court regarding the application for disability benefits.'") (citations omitted). Further, courts in this district have determined that the district court "has the authority to limit the scope of a remand to the Commissioner." See Moreira v. Commissioner of Soc. Sec., 04-CV-4410043, 2007 WL 4410043, at *1 (E.D.N.Y. Dec. 14, 2007).

Although the Regulations provide that, upon a federal court's remand to the Commissioner, the ALJ may consider "[a]ny issues relating to your claim . . . whether or not they were raised in the administrative proceedings leading to the final decision in [the claimant's] case," where the court set forth a limitation on the scope of the remand, the Commissioner and ALJ must follow such limitations. Thompson, 583 F. Supp. 2d at 475 (noting that "in the *absence* of limiting instructions or court findings, the Commissioner may revisit on remand any issues relating to the application of disability benefits," but recognizing that if there were such limiting instructions, or where a limit on the scope of remand could be implied, the Commissioner is limited by those findings and instructions); 20 C.F.R. § 404.983. Limitation of the scope of remand includes matters that were both explicitly and implicitly decided by the district court.

---

[4] In Calderon, in addition to discussing the law of the case, the Eastern District discussed a related doctrine, 'the power of a trial court to act in any litigation after the issuance of a mandate on appeal is limited by an obligation to do nothing contrary to either the letter or the spirit of the mandate as explained or elucidated by the opinion.'" 683 F. Supp. 2d at 276 (quoting Goldwyn Pictures Corp. v. Howells Sales Co., 287 F. 100, 102 (2d Cir. 1923)).

See Moreira, 2007 WL 4410043, at *1 (finding that, despite a lack of explicit direction limiting the scope of review on remand from the district court, the court implicitly limited the scope of remand by concluding that the ALJ erred in his determination of a disability onset date and remanding for "for further proceedings in accordance with this Memorandum and Order.").

Here, Judge Sharpe's March 2014 Memorandum Decision and Order remanded to the Commissioner with specific instructions: to "solicit from the vocational expert an explanation regarding the foundation and reliability of job numbers," as her testimony revealed that "the numbers to which she testified pertained to a broad range of positions, including jobs that [plaintiff] cannot perform based on her RFC." 2014 WL 1293509, at *10. In remanding, the Court did so "pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order[.]" Id. at 32. Although the ALJ did solicit such information from a vocational expert on remand, she did so only after performing an entirely new five-step sequential assessment and presenting the vocational expert with a different RFC than the one affirmed by this Court. In Calderon, the Eastern District of New York remanded to the ALJ to correct a step-five error. 683 F. Supp. 2d at 277. The court held that the ALJ erred by reversing, on remand from the court, a step-four finding that was favorable to the claimant. Id. The Eastern District held that its "mandate was merely to correct a procedural error in [the ALJ's] step-five determination; it was not an invitation to revisit the [earlier] decision in its entirety. Id. at 277. In so finding, the court observed that, by reversing so that the ALJ could correct a step-five error, the district court "necessarily reached the conclusion . . . that [the

plaintiff's] step-four determination . . . was supported by substantial evidence . . . . At that point, that determination became the law of the case and could not be changed on remand absent 'cogent' and 'compelling' reasons."  Id. at 277.  The court noted that, "when a district court passes judgment on, for example, an ALJ's step-five determination, it has implicitly affirmed the determinations at all prior steps[.]" Id. at 277.

The undersigned finds Calderon persuasive.  By getting to step five of the sequential evaluation, concluding that the Commissioner did not meet her step-five burden, and remanding on that ground with specific instructions as the steps the Commissioner must take on remand in order to perform a proper step-five assessment, Judge Sharpe necessarily concluded that ALJ Ramos' findings at steps one through four were based on substantial evidence.  Marvin, 2014 WL 1293509, at *5;[5] Nelson v. Astrue, No. CIV.A. 08-CV-01675-REB, 2009 WL 2338113, at *4 (D. Colo. July 27, 2009) (concluding that, by remanding after finding that the ALJ failed to properly assess plaintiff's subjective complaints of pain, the District Court necessarily relied on the ALJ's conclusion that plaintiff suffered from certain impairments; thus, the ALJ's "wholesale reexamination of plaintiff's alleged impairments" wherein the ALJ "redetermined which were severe and which were not severe" violated the law of the case as the ALJ "essentially negat[ed] the earlier finding that formed the basis of the district court's order."); cf. Bradley v. Colvin, 110 F. Supp. 3d 429, 441 (E.D.N.Y. 2015) (finding that the ALJ could reconsider the plaintiff's RFC on remand because the RFC in the initial

_____

[5]  Judge Sharpe explicitly made this finding as well. ("Thus, the ALJ's RFC determination is free from legal error and supported by substantial evidence.").  Marvin, 2014 WL 1293509, at *8.

decision was based on a finding the court determined to be erroneous; thus, the ALJ on remand was "without a legally binding determination of [the plaintiff's] exertional capacity to apply in step five."). Rather than proceed with a new hearing open to all issues, on remand, the Appeals Council or ALJ should have incorporated steps one through four of ALJ Ramos's findings, making new determinations only insofar as they might relate to a step-five finding.

The Commissioner recognizes the law of the case doctrine, but contends that, "[n]onetheless, the availability of new evidence is reason to revisit a finding." Dkt. No. 22 at 7. The Commissioner further argues that the Appeals Council was required to offer plaintiff an opportunity to submit additional evidence and hold a new hearing, as the failure to do so could amount to a due process violation. Id. For reasons explained below, the undersigned does not find the plaintiff's submission of new medical evidence amounted to "cogent" and "compelling" reasons justifying the Appeals Council going beyond this Court's remand order. Gladle, 2013 WL 4543147, at *3.

In support of her argument that new evidence warranted a reassessment of plaintiff's RFC, the Commissioner cites to Gladle, which itself cites Ali v. Musakey, 529 F.3d 478, 490 (2d Cir. 2008), wherein the Second Circuit noted that availability of new evidence may constitute compelling and cogent reasons to revisit its prior rulings. Id. (Citing Glade, 2013 WL 4544147, at *3). Certainly, obtaining new evidence and providing and opportunity for a new hearing is necessary in some cases. However, where, as here, the scope of the remanded is limited to the step-five determination, consideration of such evidence should be limited to the extent it is relevant to

determining step five. Although plaintiff submitted new evidence, consideration of such should have been limited only to the extent such evidence could be considered relevant to the step five analysis. Thus, the mere availability of new evidence does not amount to a cogent or compelling reason to revisit the earlier steps in the sequential analysis that have been found by this Court to be based on substantial evidence and affirmed.

The Commissioner points out that, following remand from the Court, the Appeals Council vacated the ALJ's prior determination and "properly directed the ALJ to offer Plaintiff the opportunity for a new hearing[.]" Dkt. No. 22 at 7. Although the Commissioner does not explicitly argue as such, the undersigned recognizes that by vacating the ALJ determination following this Court's remand order, there was no valid decision remaining. See BLACK'S LAW DICTIONARY 1584 (8th ed. 2004) ("Vacate . . . 1. To nullify or cancel; make void; invalidate"). However, the undersigned concludes that Appeals Council's act of vacating the decision here was improper, at least to the extent that the ALJ's new decision did not incorporate the steps one through four findings that were affirmed by this Court. By reassessing steps one through four of the sequential evaluation, the Appeals Council and ALJ failed to follow the Court's remand order limiting any subsequent proceedings to reconsideration of the step-five assessment. The Appeals Council remand order specified that the ALJ conduct "further proceedings consistent with the order of the court[,]" yet further proceedings consistent with the order of the Court should have been limited the ALJ to obtaining testimony from a vocational expert. Dkt. No. 10-9 at 66-69.

In addition, the Commissioner points out that, pursuant to The Office of Appeals

and Law and Litigation Manual ("HALLEX") section II-5-1-3, "due process requires that the claimant be given an opportunity for a hearing on the entire period to be ruled upon in the decision on remand, and to submit additional evidence or contentions or to raise questions of law as a result of the Council's remand of the case." Dkt. No. 22 at 7. The undersigned remains unconvinced that plaintiff would have been denied due process had ALJ Koennecke limited her review to the record before ALJ Ramos. As the undersigned has repeatedly noted, the District Court explicitly affirmed steps one through four of the sequential evaluation; thus, it remanded solely to address step five – the step at which the burden shifts to the Commissioner. See McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012) ("At Step Five, 'the burden shift[s] to the Commissioner to show that there is other work that [the claimant] can perform.'"). Thus, the undersigned is unsure how declining to afford plaintiff the opportunity to submit new medical evidence, where the only relevant question for the ALJ to determine is a matter on which the *Commissioner* bears the burden to prove, would violate plaintiff's right to due process. Similarly, to the extent that the Commissioner argues that it was required to afford plaintiff the opportunity for a supplemental hearing, limiting the hearing to obtaining vocational expert testimony, and providing plaintiff the opportunity to cross-examine the expert, would suffice to provide plaintiff with any process due. See Brennan v. Colvin, 13-CV-6338 (AJN/RLE), 2015 WL 1402204, at *16 (S.D.N.Y. Mar. 25, 2015) (noting that due process required affording the plaintiff a right to cross examine the vocational expert, review the vocational expert's report, and present rebuttal evidence).

Although not raised by the Commissioner, the undersigned recognizes that regulations and related Agency guides provide that, on remand from the district court, the Appeals Council may vacate the determination and instruct the ALJ to hold a new hearing and/or issue a new decision, and that such decision may review any issues related to the claim. Indeed, Program Operations Manual System Program Operations Manual System ("POMS"), POMS GN 03106.036, Court Remand Orders, provides that "a court order vacating the prior decision and remanding the case to the Commissioner voids the prior decision . . . and thus returns the case to the status of a claim 'pending before the SSA.[]'" POMS, GN 03106.036. Citing to 20 C.F.R. § 404.983, the Southern District of New York has recognized that "[o]nce an appeal is filed, however, and a case is remanded by a federal judge for further proceedings, the Commissioner can consider any issue related to the claim, "whether or not they were raised in the administrative proceedings leading to the final decision in [the] case." Thompson v. Astrue, 583 F. Supp. 2d 472, 474 (S.D.N.Y.2008); 20 C.F.R. § 404.983. Although the Thompson court provided that the Commissioner "may revisit on remand any issues relating to the application for disability benefits," the court pointed out that these broad review powers exist "*in the absence of limiting instructions or court findings*[.]" Id. Where, as here, the Court remands after concluding that the Commissioner did not meet her burden at step five and provides specific instructions for the Commissioner to follow on remand to meet her step-five burden, vacating the entire decision is inconsistent and providing a new sequential evaluation is not consistent with the limited remand order. Thus, despite the fact that the regulations provide that an Appeals Council may reassess any

18

issues on remand, where the court has specified limiting instructions, and had found that the severity and RFC determinations were supported by substantial evidence, an ALJ's decision to revisit these issues is legal error.

### III.  Appropriate Remedy

Having determined that the ALJ erred in reconsidering steps one through four of the sequential evaluation, rather than limiting proceedings to obtaining testimony from a vocational expert consistent with this Court's March 31, 2014 Memorandum-Decision and Order, the Court must next determine the appropriate remedy.  The Court is guided by the Second Circuit's decision in Butts v. Barnhart.  388 F.3d 377 (2d Cir. 2004); Calderon, 683 F. Supp. 2d at 277-78.  Addressing appropriate remedies, the Butts Court provided:

> [i]n deciding whether a remand is the proper remedy, we have stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate.  That is, when further findings would so plainly help to assure the proper disposition of the claim, we believe that remand is particularly appropriate.  On the other hand, where this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits.

388 F.3d at 385-86.  Here, although the undersigned does not believe that there are gaps in the record, it does not find, as the Eastern District did in Calderon, that the ALJ's improper redetermination of the sequential evaluation suggested "an improper attempt to justify, by whatever means necessary, a preordained conclusion that [plaintiff] was not disabled."  Calderon, 683 F. Supp. 2d at 277; see also Nettelton v.

Astrue, 11-CV-1357 (JBA), 2013 1390042, at *2-3 (D. Conn. Apr. 4, 2013). The undersigned is mindful of the fact that plaintiff's application was filed eight years ago, and that this matter has been through three ALJ determinations and is now on its second appeal to this Court; however, the undersigned finds that affording the Commissioner a final opportunity to comply with this Court's remand instructions is appropriate.

Accordingly, it is recommended that (1) the matter be reversed and remanded to the Commissioner; and (2) on remand, consistent with this Court's March 31, 2014 Memorandum-Decision and Order, the Commissioner (a) obtain testimony from a vocational expert after presenting such expert with an RFC mirroring that reached in ALJ Ramos' November 4, 2011 decision, which was affirmed by this Court, and (b) obtain from the vocational expert an explanation regarding the foundation and reliability of job numbers that he or she provides.

**WHEREFORE**, for the reasons stated above, it is hereby

**RECOMMENDED** that the Commissioner's motion for judgment on the pleadings be **DENIED**, that plaintiff's motion for judgment on the pleadings be **GRANTED** insofar as the Commissioner's decision denying disability benefits be **REMANDED,** pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Report-Recommendation and Order; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

**fourteen (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**

Dated: February 16, 2016
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge